2014 BNH 007          Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:

                                            Bk. No. 13-12782-BAH
                                            Chapter 13

Philip J. Gambale, Sr.,
         Debtor

*Gerald D. Neiman, Esq.*
*Keene, New Hampshire*
*Attorney for Debtor*

*Stephen L. Boyd, Esq.*
*Wadleigh, Starr, & Peters, PLLC*
*Manchester, New Hampshire*
*Attorney for Creditor Martine Gambale n/k/a Martine Laureyns*

## MEMORANDUM OPINION

**I.  INTRODUCTION**

      Before the Court is an objection filed by Philip J. Gambale, Sr. (the "Debtor") to the claim of his former wife, Martine Gambale n/k/a Martine Laureyns ("Ms. Laureyns").  Ms. Laureyns filed a claim asserting she is owed a debt arising from the couple's divorce.  She contends her claim is entitled to priority status, which would require her claim be paid in full through the Debtor's chapter 13 plan.

      This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  PROCEDURAL BACKGROUND

On December 18, 2013, Ms. Laureyns filed a proof of claim (POC 4) with the Court.  She asserts that she holds a $36,463.00 unsecured claim entitled to priority status under 11 U.S.C. § 507(a).  She attached an order from the New Hampshire Circuit Court - 6th Circuit - Family Division (the "Family Court") to her proof of claim which indicates that, as of September 24, 2013, the Debtor owed her a total $36,463.00 "pursuant to previous Orders issued by this Court."

On February 27, 2014, the Debtor objected to Ms. Laureyns' claim (Doc. No. 36) (the "Objection") on the grounds that it failed to provide sufficient clarity as to the nature of the Debtor's claimed liability.  He noted that Ms. Laureyns asserts her claim is entitled to priority status pursuant to 11 U.S.C. § 507(a)(5) and (15), when such status may more properly be asserted as a domestic support obligation ("DSO") entitled to priority under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  The Debtor contended further in the Objection that he has paid all DSO obligations to Ms. Laureyns, with the exception of a single Social Security dependent benefit check in the amount of $968.00, which he acknowledges he received in error and has been ordered by the Family Court to repay to Ms. Laureyns.

The Court held a hearing on the Objection on April 9, 2014, at which time it became apparent that the Debtor has not paid Ms. Laureyns the amount she asserts she is owed (less the $968.00 that the Debtor agrees is outstanding).  It also became apparent that the Debtor does not believe that the amounts owed to Ms. Laureyns consist of DSOs, but rather constitute debt owed pursuant to the division of property ordered in the Family Court.  After a discussion with the parties about the best way to proceed, the Court ordered the parties to submit a stipulated record, written offers of proof, and memoranda of law for the Court to consider, after which the Court would decide whether to rule on the stipulated record or conduct a further hearing.

Subsequent to the hearing, the Debtor filed an amended objection to Ms. Laureyns' claim (Doc. No. 46) (the "Amended Objection"). In the Amended Objection, the Debtor indicates that he objects to Ms. Laureyns' claim to the extent that she asserts that her claim is both a non-dischargeable priority claim under 11 U.S.C. § 507(a)(1)(A) and/or (a)(1)(B) and an unsecured non-priority claim under 11 U.S.C. § 523(a)(15). The Amended Objection makes clear that the Debtor does not believe that the total liability owed to Ms. Laureyns is entitled to priority status. The Debtor concedes that the $968.00 Social Security dependent benefit check is in the nature of support for the couple's minor child (who has since reached the age of majority) and should be characterized as a DSO and therefore entitled to priority status. The Debtor contends, however, that the balance of Ms. Laureyns' claim, or $35,495.00, is not in the nature of support within the meaning of 11 U.S.C. § 101(14A) and therefore is not entitled to priority status.

In compliance with the Court's order, the parties filed a stipulated record (Doc. No. 49) and memoranda of law (Doc. Nos. 52 and 53). In addition, Ms. Laureyns filed a written offer of proof (Doc. No. 52-1). Upon review of the documents, the Court finds that a further hearing on this matter is unnecessary and will proceed to rule on the stipulated record and offer of proof submitted by the parties.

## III. FACTS

The stipulated record reveals that Ms. Laureyns' $36,463.00 claim consists of the following components:

    A.    $968.00 representing the Social Security dependent benefit check;

    B.    $34,400.00 representing 86 bi-weekly payments of $400.00 owed from September 29, 2009, to March 2013;[1]

---

[1] This amount consists of $23,600.00 representing 59 bi-weekly payments of $400.00 owed from September 29, 2009, to March 12, 2012, the date of the final hearing on the parties' divorce, plus $10,800.00 representing 27 bi-weekly payments of $400.00 owed from March 13, 2012, through March,

3

  C. $900.00 representing the Debtor's share of the cost for replacing the furnace in the marital home; and

  D. $195.00 to be paid towards Ms. Laureyns' attorney's fees.[2]

The Family Court ordered these amounts at various points in the parties' lengthy divorce proceedings. A summary of the relevant portions of the Family Court proceedings follows.

On May 12, 2009, the Debtor filed for divorce. Thereafter, Ms. Laureyns filed a cross-petition for divorce. On September 1, 2009, the Family Court approved the parties' partial temporary stipulation (the "Stipulation"). In a section titled "Allocation of Debt," the Stipulation provided:

> [E]ach party shall be responsible for the debts listed in his/her own name. [Ms. Laureyns] shall continue to pay the joint debts on Exhibit A with the exception that the [Debtor] shall pay the Steele Hill debt, and the [Debtor] shall forward FOUR HUNDRED DOLLARS ($400) every two (2) weeks to [Ms. Laureyns] for the payment of said joint debts starting on September 29, 2009.

(Emphasis added.) The debts listed on Exhibit A totaled $149,163.04 and included the following:

| | |
|---|---|
| Joint student loan debt | $3,539.89 |
| Individual credit card debt of Ms. Laureyns | $5,899.23 |
| Individual credit card debt of the Debtor | $1,647.37 |
| Joint debt owed to Town of Hillsboro | $6,917.78 |
| Joint debt for utilities, insurance, plowing, newspaper | $1,023.72 |
| Joint mortgage debt | $130,135.05 |

The joint debt, towards which the Debtor agreed to pay $400.00 bi-weekly, totaled $141,616.44. The Stipulation did not award alimony to either party and the issue of child support was left "unresolved."

---

2013, when the couple's divorce decree became final.

[2] In a footnote in her memorandum of law, Ms. Laureyns states that she does not seek to recover this $195.00 debt. Doc. No. 52 at n.2. This reduces her total claim to $36,268.00.

On November 20, 2009, a child support guidelines worksheet was filed with the Family Court. It showed that the Debtor's monthly gross income at that time was $2,400.00 while Ms. Laureyns' monthly gross income was $4,398.00. On that same date, the Family Court issued a uniform support order requiring the Debtor to pay $457.00 per month in child support. It did not award alimony to either party. The Family Court issued a separate order that same date requiring the Debtor to pay Ms. Laureyns $900.00 toward the installation of a furnace in the marital home, which the court described "as necessary to maintain the home properly." Ms. Laureyns had borrowed the money to replace the furnace from the couple's adult daughter. The Family Court also required the Debtor to continue paying $400.00 every other week to Ms. Laureyns as "these payments were clearly not for child support; they were for expenses the [Debtor] already had a legal obligation to pay."

Between November 2009, and the date of the final hearing on the parties' divorce in March 2012, the parties filed several pleadings seeking, among other things, to modify the Family Court's temporary order as well as an order finding contempt. In those pleadings, the bi-weekly payment was variously described by the Debtor as payments "towards household expenses," "general debt support," and "support." Ms. Laureyns described the payments as "bi-weekly debt payment," "payments due on the household expenses," and payments "towards his continuing obligations to the marital estate." The Family Court described the payments as "payment of household expenses," payments toward expenses for which "he was already legally obligated to pay," payments toward the "mortgage and taxes" which are "joint debts," and "bi-weekly home expenses."

A final hearing on the parties' cross-petitions for divorce was held in March 2012. On May 8, 2012, the Family Court issued a final divorce decree (the "Final Decree"), which became

5

final on March 27, 2013. In the section of the decree titled "Division of Debt," the Family Court ordered in relevant part:

> (2) Mr. Gambale shall pay to Mrs. Gambale the $400.00 bi-weekly, which was previously ordered by the Court and which he stopped paying after being required to pay child support on November 20, 2009. The accumulated amount is $23,600 (59 x $400) from the date of the Order to the date of the final hearing [in March 2012].
>
> (3) Mrs. Gambale shall pay any remaining amount of marital debt (as set forth in Exhibit C which was submitted to the Court during the final hearing).
>
> (4) Mr. Gambale shall pay to Mrs. Gambale the $195 for attorney's fees which he was ordered to pay on March 15, 2010.
>
> (5) Mr. Gambale shall pay to Mrs. Gambale the amount of $968 for the Social Security dependent benefit as ordered on September 6, 2012.

The Family Court did not award any alimony. By the time the Family Court issued the Final Decree the couple's youngest child had reached the age of majority; accordingly, the Family Court did not award any child support.

On May 20, 2013, the Family Court issued an order on a cross-motion for contempt filed by Ms. Laureyns wherein the Court found "there were an additional 27 bi-weekly payments in the amount of $400.00 each owed [by the Debtor to Ms. Laureyns], for a total of $10,800.00," due to the delay between the final hearing in March 2012 and the effective date of the Final Decree in March 2013. The Family Court described these payments as relating to "property issues in the parties' divorce."

On November 15, 2013, the Debtor filed a petition under chapter 13 of the Bankruptcy Code. He listed Ms. Laureyns as a creditor holding an unsecured nonpriority claim in the amount of $25,663.00 pursuant to a "divorce settlement 2013." In his chapter 13 plan dated January 29, 2014, he treated $968.00 of Ms. Laureyns' claim as a DSO to be paid in full through the plan; he stated further in his plan that "this is the only outstanding Domestic Support Obligation owed to

6

Martine Gambale."   The balance of Ms. Laureyns' claim was treated as an unsecured nonpriority claim.   The plan estimated that the dividend to unsecured nonpriority creditors will total 12.2%.   The plan has not yet been confirmed.

## IV.  DISCUSSION

At issue in this case is whether the debt of $900.00 for the furnace replacement and the debt of $34,400.00 attributable to the $400.00 bi-weekly payments constitute DSOs within the meaning of the Bankruptcy Code and therefore are entitled to priority status under § 507(a)(1).   The Debtor concedes that the debt of $968.00 for the Social Security dependent check is a DSO; Ms. Laureyns is no longer seeking to recover the debt of $195.00 for attorney's fees.

Section 101(14A) of the Bankruptcy Code defines "domestic support obligation" as:

a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

7

>   (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Under the above definition of a DSO, it is clear from the stipulated record that three of the four requirements are not in dispute in this case.  The parties agree that (1) on the petition date the Debtor owed a debt to his former spouse, Ms. Laureyns, which is a requirement of § 101(14A)(A); (2) the debt was established by the couple's Final Decree before the order for relief in this case, which is a requirement of § 101(14A)(C); and (3) the debt has not been assigned to a nongovernmental entity, which is a requirement of § 101(14A)(D).  The only element in dispute is whether the debt owed to Ms. Laureyns is one "in the nature of alimony, maintenance, or support," which is a requirement of § 101(14A)(B).  See In re Efron, 495 B.R. 166, 174 (Bankr. D.P.R. 2013).

The First Circuit Court of Appeals explained in its decision in Smith v. Pritchett, 586 F.3d 69, 73 (1st Cir. 2009), that the term "domestic support obligation" is a term that was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See Pub. L. 109-8, 119 Sat. 23 (2005).  The term is derived from the provisions of the former 11 U.S.C. § 523(a)(5).  Smith v. Pritchett (In re Smith), 398 B.R. 715, 721 (B.A.P. 1st Cir. 2008), aff'd, 586 F.3d 69 (1st Cir. 2009).  "The examination to determine whether the debt is a domestic support obligation [under § 101(14A)] is the same as a § 523(a)(5) inquiry as they both seek to determine if the obligation is in the nature of 'alimony, maintenance, or support.'"  Smith, 398 B.R. at 721; see Efron, 495 B.R. at 175 ("[As] the language of § 101(14A) tracks the language of former 11 U.S.C. § 523(a)(5), this Court deems that case law interpreting such former statute is applicable in its construing of § 101(14A)").  "[P]ursuant to the statute, for an obligation to a former spouse to be considered a DSO, it must actually be in the nature of support."  Smith, 586

8

F.3d at 73.  The issue is one of federal bankruptcy law, not state law.  Id.  Accordingly, the labels used to describe the obligation in state court are not controlling for bankruptcy purposes. In re Werthen, 329 F.3d 269, 273 (1st Cir. 2003); Efron, 495 B.R. at 178.  "The party seeking to have a debt determined a DSO and thus nondischargeable [under chapter 7 or 13] bears the burden of proving that the obligation is in the nature of support."  Smith, 586 F.3d at 73 (citing Werthen, 329 F.3d at 271-72).

Support has been described as "what is given to provide for the upkeep of the recipient spouse and children."  Werthen, 329 F.3d at 273.  The "principal" or "critical" issue is whether the divorce court judge "intended" a particular award to be for support or for something else. Smith, 586 F.3d at 74; Werthen, 329 F.3d at 273.  The First Circuit Court of Appeals "has not adopted a specific multi-factor test" for courts to use to discern intent when making a determination as to whether a particular obligation is in the nature of support.  Smith, 586 F.3d at 74.  Instead, the court has stated that it is a "fact intensive" inquiry that depends on "the totality of the circumstances of a particular case."  Id.

Although a multi-factor test has not been adopted in the First Circuit, factors considered by other courts may inform the totality of the circumstances analysis that bankruptcy courts must undertake.  Factors that other courts consider in making a determination as to whether a particular obligation is in the nature of support include:

> (1) language and substance of the state court's order and thus the characterization of the payment in the decree and the context in which the disputed provisions appear; (2) the parties' financial circumstances at the time of the order and thus whether the recipient spouse actually needed spousal support at the time of the divorce; (3) whether an assumption of a debt or creation of an obligation has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are met and to ensure a home for the former spouse and any minor children; (4) whether the parties intended to create an obligation of support; (5) the function served by the obligation at the time of such order; (6) whether the labels given to the payments of the parties may be looked at as evidence of the parties' intent; (7) whether there was an

9

> imbalance in the relative income of the parties at the time of the divorce decree and thus whether the payment appears to balance disparate income; (8) whether the obligation terminates on the death or remarriage of either spouse; (9) whether the payments are made directly to the recipient spouse in a lump sum [or] are paid in installments over a substantial period of time; (10) whether the payments are to be made directly to the former spouse or to a third party.

Efron, 495 B.R. at 176 (collecting cases).

### A. Furnace Replacement Expense

During the parties' pending divorce, the furnace for the marital home needed to be replaced. Ms. Laureyns borrowed the money to pay for such work from the couple's adult daughter. The Family Court ordered the Debtor to pay Ms. Laureyns $900.00 toward the cost of replacing the furnace stating "the furnace replacement was necessary to maintain the home properly."

In the Court's view, a working furnace is a necessary component of any shelter being provided for one's spouse and children. Heat and hot water are necessities that clearly contribute to the well-being of one's family. See Keeran v. Keeran (In re Keeran), 112 B.R. 881, 885 (Bankr. N.D. Ohio 1990) (holding that a debt incurred in order to purchase household appliances, which are "necessary goods," was non-dischargeable under § 523(a)(5) as payment on the obligation had the effect of providing support); Rich v. Rich (In re Rich), 40 B.R. 92, 95-96 (Bankr. D. Mass. 1984) (finding that the debtor's obligation to pay an unsecured home improvement loan used to fund the installation of a sewer system was a liability in nature of support such that it was non-dischargeable under § 523(a)(5)). Although not labeled as support in the initial Family Court order requiring the Debtor to make such payment, nor in the 2013 order on reconsideration of the Final Decree, the Court finds that the $900.00 debt for the furnace replacement is in the nature of support and therefore qualifies as a DSO under the Bankruptcy Code.

### B. Bi-Weekly Payments Pending Entry of the Final Decree

The Court must next decide whether the $400.00 bi-weekly payment to Ms. Laureyns is in the nature of support. The record establishes that this obligation arose from the Stipulation signed by both parties in August 2009 and approved by the Family Court on September 1, 2009. A written agreement between the parties is persuasive evidence of intent. In re Perez, No. 12-03808, 2013 WL 959842, at *5 (Bankr. D.P.R. Mar. 12, 2013) (quoting In re Yeates, 807 F.2d 874, 878 (10th Cir. 1986)). Normally, the characterization in the agreement controls if it clearly shows that the parties intended the debt to reflect either support or a property settlement. Perez, 2013 WL 959842, at *5 (quoting Yeates, 807 F.3d at 878).

As described above, the $400.00 payment that the Debtor was to make to Ms. Laureyns every other week was "for the payment of [the couple's] joint debts," with the joint debts being listed as (a) student loan debt in the amount of $3,539.89; (b) monies owed to the Town of Hillsboro in the total amount of $6,917.78 for water and presumably real estate taxes; (c) monies owed for utilities, insurance, plowing, and newspaper totaling $1,023.72; and (d) mortgage debt on the marital home totaling $130,135.05. Thus, the payment was to be the Debtor's contribution toward ongoing payment of the couple's existing marital liabilities, which Ms. Laureyns was responsible for paying under the Stipulation. These payments were listed in a section titled "Allocation of Debt" and, from the Stipulation itself, appear to relate to property issues, not support. The Stipulation further indicated that the issues of support were "unresolved" at the time it was signed. Thus, the agreement between the parties evidences an intent that the obligation relate to property issues and the division of marital liabilities.

The Court finds further that at the time that the Family Court issued its temporary order in November 2009, the parties' financial circumstances were vastly different. The Debtor was

11

earning only $2,400.00 per month while Ms. Laureyns was earning $4,398.00, roughly $2,000.00 more per month than her husband. As the higher wage earner, Ms. Laureyns was in the better financial situation at the time the obligation was created. This is consistent with the Family Court's decision not to award alimony on a temporary basis in 2009 nor on a final basis in 2012. The child support worksheet submitted in the Family Court in 2009 showed that the Debtor was left with $1,943.00 on which to live, from which he still needed to make the $400.00 bi-weekly payments, thus leaving him with less than $1,143.00 per month for his expenses. Ms. Laureyns was left with $3,293.88 per month with which to pay her monthly expenses. It does not appear that the $400.00 payment from the Debtor to Ms. Laureyns was an attempt to balance disparate income; in fact, it made the parties' financial situations even more unbalanced.

The Final Decree provided for the $400.00 payment in a section titled "Division of Debt" not in the sections titled "Parenting Plan and Uniform Support Order" or "Alimony." While not binding on the Court, it does provide further evidence that at the time the Final Decree issued in 2012, the Family Court considered the previously ordered payments to be related more to debt and property issues than to support. In this same section of the Final Decree, the Family Court ordered Ms. Laureyns to pay the remaining marital debt, demonstrating further that the Family Court was concerned with dividing marital assets--or in this case, liabilities--and not support. Further, post-divorce in 2013, the Family Court described the payments as relating to "property issues in the parties' divorce."

In addition, the fact that the obligation did not extend past the couple's divorce proceedings but rather terminated once the Final Decree became final also suggests that the obligation is not in the nature of support. This is consistent with the idea that the payments were being made on account of a property settlement, i.e., a division of the couple's assets and liabilities. Further,

12

there was no provision in the Stipulation that the payment would terminate upon the death or remarriage of either spouse, which provision might have indicated that the payment was intended to be support.

Looking at the stipulated record as a whole, it appears to the Court, under the totality of the circumstances, that the parties and the Family Court intended the $400.00 bi-weekly payment to address the need to repay the couple's outstanding joint debt.   While the parties and the Family Court may have described the obligation as one for "support" or "household expenses" from time to time after it was created, its genesis in the Stipulation and then its award in the Final Decree show that it was not intended to address the "upkeep of the recipient spouse and children" going forward, but rather to address the payment of overdue family obligations.   As the Family Court stated more than once in its orders, it was not ordering the Debtor to pay Ms. Laureyns anything beyond that which he was already legally obligated to pay.   In other words, the Family Court was not ordering the Debtor to provide support to Ms. Laureyns but instead it was ordering him to make payment on joint marital liabilities.   Ms. Laureyns has not met her burden of proving that the Debtor's obligation to make the $400.00 bi-weekly payment to her during the pendency of the divorce proceedings was a DSO within the meaning of § 101(14A).

## V.  CONCLUSION

For the reasons outlined above, the Court finds that the following elements of Ms. Laureyns' claim are DSOs within the meaning of § 101(14A) and therefore are entitled to priority status under § 507(a)(1):

    A.    $968.00, representing the Social Security dependent benefit check; and

    B.    $900.00, representing the Debtor's share of the cost for replacing the furnace in the marital home.

The remaining $34,400.00 element of Ms. Laureyns' claim, representing 86 bi-weekly payments of $400.00 owed from September 29, 2009, to March 2013, is not a DSO and therefore is not entitled to priority status under § 507(a)(1).  Ms. Laureyns' claim for $195.00 in attorney's fees has effectively been withdrawn.

Accordingly, the Court will enter a separate order consistent with this opinion sustaining in part and overruling in part the Amended Objection.  Ms. Laureyns' claim will be allowed in the total amount of $36,268.00, consisting of a priority unsecured claim of $1,868.00, and a general unsecured claim of $34,400.00.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   June 19, 2014                    /s/ Bruce A. Harwood
                                         Bruce A. Harwood
                                         Chief Bankruptcy Judge